# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3511

_____

Anthony Charboneau, III

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 18, 2012
Filed: January 11, 2013

_____

Before LOKEN, BEAM, and SMITH, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Anthony Charboneau of sexual abuse of a minor, J.B., his ex-wife's cousin, and abusive sexual contact with a minor, D.C., his biological daughter, in Indian country in violation of 18 U.S.C. §§ 2243(a), 2244(a)(3), and 1153. Charboneau appealed, arguing Confrontation Clause error when a government witness described a forensic interview and medical report of D.C. We affirmed, finding no Confrontation Clause violation. United States v. Charboneau, 613 F.3d 860, 861-62

(8th Cir. 2010). Charboneau then moved for post-conviction relief under 28 U.S.C. § 2255, arguing (1) the district court violated his Sixth Amendment right to a public trial by closing the courtroom to the public while D.C. testified, and (2) ineffective assistance of appellate counsel in failing to raise the public trial issue on direct appeal. The district court[1] denied the motion without a hearing and granted a certificate of appealability. Concluding that Charboneau procedurally defaulted the public trial claim by not raising it on direct appeal, and that the procedural default was not excused by ineffective assistance of appellate counsel, we affirm.

## I.

The two-day trial turned on whether the jury believed testimony of J.B. and D.C. describing repeated sexual abuse by Charboneau while they lived at different times in his home. Prior to jury selection, counsel advised the court that the trial testimony would raise issues involving Charboneau's divorce, multiple custody disputes, and what defense counsel described as the "hidden agendas" of Robin Charboneau, Charboneau's ex-wife and D.C.'s mother, who had been treated for alcohol addiction and was making "a documentary film on rape and child abuse on the Indian reservations." In his opening statement, defense counsel described D.C. as a "diminutive child, rather bright, wants to live with her dad very badly and is caught in the middle of a terrible, terrible divorce and custody dispute."

D.C., who was thirteen years old at the time of trial, was the government's third trial witness. By then, the jury had learned from the first two witnesses, an FBI case agent and Robin, that D.C. first disclosed sex abuse by Charboneau to her mother. But the district court had sustained hearsay objections to what D.C. had told these witnesses, explaining to the jury, "we should hear it from the witness experiencing it."

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

At a sidebar conference before D.C. took the stand, the government asked the court to close the courtroom to the public during her testimony:

>	[THE PROSECUTOR]:  Your Honor, next is a witness, she's 13 years old. . . . I'm looking . . . Your Honor [at] a motion under 3509[2] which allows for the Court to clear the courtroom of non-interested people.  There's a lot of family members in the back and it's going to be hard enough for her to testify and confront her father, who is the defendant in this case, let alone all these witnesses in the back.  The law does allow the Court to clear the courtroom of non-interested people.

>	THE COURT: That's . . . of course true, but isn't there some need for a threshold showing of difficulty before that's appropriate?  And I didn't give [defense counsel] a chance to respond.  What do you think?

>	[DEFENSE COUNSEL]:  My response, Your Honor, was that [the prosecutor] prior to [jury selection] told the Court in our presence that he thought [D.C.] was going to do just fine and I don't know that she isn't going to do just fine.  So I don't know that there's an extraordinary need.

>	[THE PROSECUTOR]:  Your Honor . . . [w]hat I can tell you is that last night when I prepped this child she broke down quite a bit. And being in this room with a jury is going to be difficult, with the father who's going to be difficult, with all these other eyes that are relatives in the back of the courtroom looking at her.  I think it's going to cause some psychological harm to this child.

---

[2]18 U.S.C. § 3509(e) provides that, when a child testifies, the court may exclude from the courtroom "all persons . . . who do not have a direct interest in the case" if it determines on the record "that requiring the child to testify in open court would cause substantial psychological harm to the child or would result in the child's inability to effectively communicate. Such an order shall be narrowly tailored to serve the Government's specific compelling interest." See generally Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607-09 (1982).

[DEFENSE COUNSEL]: Your Honor, I don't know that any more psychological harm is going to be caused to this child than what she's already endured.

THE COURT: Well, I'll tell you quite frankly I often think that trial is far worse than the crime . . . in terms of the effect on the victims. I've had little people on the witness stand who look like deer in the headlights, you know, with big round eyes. It's not a pleasant thing. I hate to have you put her on and have her freeze because of the presence of these people, and I'm going to grant your request and wait for the Fargo Forum to [pillory] me for having so done, but I will grant your request.

The courtroom was closed to the public during D.C.'s testimony. It was open for all other parts of the trial, including the testimony of J.B., who was thirteen when the sexual abuse occurred and twenty years old at trial. A transcript of D.C.'s testimony (with her name redacted) is publicly available.

## II.

The Sixth Amendment guarantees criminal defendants "the right to a speedy and public trial . . . ." U.S. CONST. amend. VI. While the right to a public trial is not absolute, the overriding "presumption of openness" may not be lightly overcome. Waller v. Georgia, 467 U.S. 39, 45 (1984). To justify closing a trial to the public, the party seeking closure must "advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Id. at 48. Charboneau argues that the government's request and the district court's closure order violated each subpart of the inquiry required by Waller.

-4-

Charboneau did not raise these issues at trial.  Indeed, trial counsel did not clearly object to closing the courtroom, probably because the § 3509(e) issue of psychological harm raised by the government's motion exactly fit the defense strategy of persuading the jury that D.C.'s mother had pressured D.C. to falsely accuse Charboneau of sex abuse in order to further Robin's "hidden agendas."  More importantly for purposes of this appeal, Charboneau did not raise a public trial issue on direct appeal, meaning this § 2255 claim was procedurally defaulted.  See Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005), cert. denied, 546 U.S. 1177 (2006).  Because Charboneau asserts no claim of actual innocence, he must demonstrate cause and prejudice to excuse his procedural default.  "Ineffective assistance of appellate counsel may constitute cause and prejudice to overcome a procedural default."  Id.  To establish ineffective assistance, Charboneau must show that appellate counsel's performance was constitutionally deficient and that he was prejudiced by that deficiency.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  We review the ultimate issue of ineffective assistance *de novo*.  Close v. United States, 679 F.3d 714, 716 (8th Cir. 2012).

A. Deficient Performance.  In reviewing this factor, we apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  Our review is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal.  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal," Jones v. Barnes, 463 U.S. 745, 751 (1983).  Therefore, "absent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy."  United States v. Brown, 528 F.3d 1030, 1033 (8th Cir.), cert. denied, 555 U.S. 937 (2008).  On appeal, Charboneau ignores this principle, arguing that, "if this Court finds that Charboneau's sixth-amendment rights to a 'public trial' were violated, then appellate counsel's representation fell below an objective standard of reasonableness."  But failure to raise a constitutional issue on direct appeal -- even one

that may be classified as "structural error" -- does not necessarily mean that counsel's performance was constitutionally deficient. As we reiterated in Anderson v. United States, 393 F.3d 749, 754 (8th Cir.), cert. denied, 546 U.S. 882 (2005):

> While the Constitution guarantees criminal defendants a competent attorney, it does not insure that defense counsel will recognize and raise every conceivable constitutional claim. . . . The question here is not whether counsel's choice to omit the argument on appeal was an intelligent or effective decision, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt.

In arguing the merits of the underlying public trial issue, Charboneau asserts that his claim is indistinguishable from the claim in United States v. Thunder, 438 F.3d 866 (8th Cir. 2006), where we vacated a conviction on direct appeal because the district court had violated the defendant's right to a public trial by closing the courtroom during the testimony of children he allegedly abused. Although the relevant inquiry is not simply whether the two cases are indistinguishable, it is useful to compare the two trial records in evaluating whether the performance of Charboneau's appellate counsel was constitutionally deficient. We conclude there are two critical differences.

First, the district court in Thunder closed the courtroom "without making any findings to support the closure." 438 F.3d at 867. "The district judge simply stated that he 'certainly had no problem with closing the courtroom.'" Id. at 868. Here, counsel alerted the court to possible issues of psychological harm prior to jury selection and during opening statements. When the government made its § 3509(e) request prior to calling D.C. as a witness, the court immediately noted the need "for a threshold showing of difficulty" -- the initial Waller requirement -- and asked for defense counsel's response, which was to doubt "there's an extraordinary need." The prosecutor then described the basis for his contention that D.C. testifying "with all these other . . . relatives in the back of the courtroom looking at her [would] cause

-6-

some psychological harm to this child." The district court, drawing on its extensive experience with child victims testifying in prior cases, then granted the government's § 3509(e) motion. That the court did not articulate more explicit findings regarding D.C.'s psychological well-being, or explicitly consider other alternatives, is understandable given the lack of a defense objection to its ruling. And under our deferential standard of review, we must assume appellate counsel was aware that, even if a clear objection had been made, "specific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record." United States v. Farmer, 32 F.3d 369, 371 (8th Cir. 1994).

Second, perhaps more significant, in Thunder defense counsel "objected and renewed the objection each time that the courtroom was cleared for a child's testimony." 438 F.3d at 867. Here, while Charboneau's trial counsel questioned the government's initial showing of need, counsel did not object when the court temporarily closed the courtroom after the prosecutor made a stronger showing. Nor did counsel cite the Sixth Amendment or the Supreme Court's decision in Waller during the brief colloquy on this issue. "To preserve an error for appellate review, an objection must be timely and must clearly state the grounds for the objection." United States v. Pirani, 406 F.3d 543, 549 (8th Cir.) (en banc), cert. denied, 546 U.S. 909 (2005). Given the lack of a clear objection, we must assume appellate counsel knew that, unlike in Thunder, our review of a public trial claim on direct appeal would be for plain error. This virtually forecloses Charboneau's claim of deficient appellate performance. As we explained in Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998): "The decision to forgo a plain error claim is usually the result of a reasonable winnowing of weaker appellate claims. Therefore, we rarely conclude that an appellate attorney's performance was constitutionally deficient for not raising such a claim."

We also assume that, in weighing whether to add a public trial issue to the serious Confrontation Clause issues raised on direct appeal, Charboneau's appellate

counsel knew that the government's interest in "safeguarding the physical and psychological well-being of a minor [is] a compelling one" that warrants the temporary closing of a public trial upon a properly particularized showing of need. Globe Newspaper, 457 U.S. at 607. Likewise, for Strickland purposes, we assume that counsel knew from comparing our decisions in Farmer and in Thunder that applying the Waller requirements to testimony by the child victim in a particular case is not easy, and that the district court had made at least an abbreviated attempt to do so in this case. In these circumstances, we conclude it was not unreasonable for Charboneau's appellate counsel to conclude that the district court's findings, though not extensive, were sufficient to withstand a plain error challenge under Waller on direct appeal.[3] Therefore, appellate counsel's decision to forgo the public trial claim and focus on arguably stronger Confrontation Clause claims was the reasonable exercise of appellate strategy, not constitutionally deficient representation.

B. Prejudice. Relying on McGurk v. Stenberg, 163 F.3d 470, 475 (8th Cir. 1998), Charboneau argues that he need not show Strickland prejudice because prejudice is presumed when counsel's deficient performance results in "structural error," here, the lack of a public trial. But the issue is alleged ineffective assistance of appellate counsel. *His* performance did not result in structural trial error, he simply failed to assert a public trial claim on appeal. Thus, the normal Strickland prejudice rule applies: Charboneau "must demonstrate a reasonable probability that the result of the proceedings" -- that is, the direct appeal -- "would have been different absent counsel's error." Bear Stops v. United States, 339 F.3d 777, 781 (8th Cir.), cert. denied, 540 U.S. 1094 (2003).

---

[3]Charboneau's emphasis on the "structural error" aspect of public trial issues does not affect this inquiry. "Whether an error can be properly characterized as 'structural' has nothing to do with plain error review . . . ." United States v. Turrietta, 696 F.3d 972, 976 n.9 (10th Cir. 2012); accord Neder v. United States, 527 U.S. 1, 34-35 (1999) (Scalia, J., concurring in part and dissenting in part); United States v. Phipps, 319 F.3d 177, 189 n.14 (5th Cir. 2003).

We have previously explained why there is no reasonable probability that the district court's order temporarily closing the courtroom while D.C. testified was plain error under Waller at the time the court ruled. On appeal, Charboneau argues for the first time that the Supreme Court's subsequent decision in Presley v. Georgia, 130 S. Ct. 721 (2010), filed nine days before counsel's brief was due in the direct appeal, established that the district court violated Charboneau's right to a public trial by not considering, *sua sponte*, reasonable alternatives to closure. In Presley, the Court summarily ruled "that trial courts are required to consider alternatives to closure even when they are not offered by the parties . . . ." 130 S. Ct. at 724. Charboneau argues that reasonable alternatives not considered by the district court in this case included a screen shielding D.C. from spectators, testimony by closed circuit television as authorized by 18 U.S.C. § 3509(b)(1), moving spectators to other rows, and instructing spectators not to engage or interact with the witness.

In Presley, despite defense objection, the courtroom was closed during juror *voir dire* to the one member of the public who was present in order to better accommodate the large number of prospective jurors. Noting that "[n]othing in the record shows that the trial court could not have accommodated the public," the Supreme Court pointed out obvious alternatives that were available and should have been considered. Id. at 725. How Presley applies when a child is about to testify at a criminal trial is far from clear. Prior circuit court decisions -- available to Charboneau's appellate counsel when deciding whether to raise the issue -- concluded that a trial judge is *not* required to consider *sua sponte* alternatives to temporary closure for the testimony of one witness, giving reasons that seem eminently sound and were not implicated by the jury *voir dire* in Presley. See Bowden v. Keane, 237 F.3d 125, 131 & n.3 (2d Cir. 2001); Bell v. Jarvis, 236 F.3d 149, 170 (4th Cir. 2000) (en banc) ("the trial judge is not in a superior position to suggest alternatives which may be more acceptable to the defendant and his counsel"), cert. denied, 534 U.S. 830 (2001); Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) (en banc) ("we do not believe that the Supreme Court [in Waller] wanted trial judges selecting the alternative

-9-

of limited closure to consider further alternatives that themselves pose substantial risks to a fair trial for the defendant"), <u>cert. denied</u>, 524 U.S. 958 (1998).  To take obvious examples of the risks at issue, the defense may decide that temporary closure will afford more effective cross examination of a child witness than if the child testifies by closed circuit television, or that screening the witness from members of the audience who are visibly supportive of the defendant will send a negative message to the jury.  We need not decide this issue because, whatever impact <u>Presley</u> may have on closure issues when a child victim testifies at trial, it has no impact on whether the closure was plain error in this case because <u>Presley</u> was not decided until after the district court ruled.

For these reasons, we conclude that Charboneau failed to show constitutionally ineffective assistance of counsel on direct appeal.  Accordingly, his public trial claim is procedurally barred, and his motion for § 2255 relief was properly denied.

The Order of the district court denying Charboneau's motion for relief under 28 U.S.C. § 2255 is affirmed.

_____