2014 COA 99

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Jason Jackson HEYWOOD,**
**Defendant–Appellant.**

**Court of Appeals No. 11CA2165**

Colorado Court of Appeals,
Div. III.

Announced August 14, 2014

Jefferson County District Court No. 10CR2351, Honorable Stephen M. Munsinger, Judge

John W. Suthers, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE WEBB

¶ 1 A jury convicted Jason Jackson Heywood of violating section 18–3–405.4(1)(b), C.R.S.2013, Internet sexual exploitation of a child. As relevant here, this statute applies if the actor knowingly importunes, invites, or entices another person, whom the actor knows or believes to be younger than fifteen years old, to view his intimate parts through a computer network. Resolving a novel question, we conclude that importuning, inviting, or enticing requires more than allowing such viewing to continue, after the actor comes to know or believe that the viewer is less than fifteen years old.

¶ 2 Here, the undisputed evidence proves at most only that Heywood, without any information about the viewer's age, invited a person to view a webcam stream of him masturbating, and then did not stop the stream until several minutes after the viewer had said that she was fourteen years old. Because this evidence was insufficient, we reverse the judgment of conviction and remand the case for entry of a judgment of acquittal.

## I. Background

¶ 3 Heywood and a Jefferson County District Attorney's investigator were connected to an Internet chat room[1] restricted to people at least eighteen years old. Heywood used the screen name "armyjay23." Using two separate screen names, "tongue_kisser4" and "Tina Gallagher," the investigator masqueraded as two females. Tina Gallagher's chat room profile did not include her age.

¶ 4 Heywood initiated an instant-message[2] conversation with Gallagher by saying, "hi." Gallagher responded, "hi," and then asked, "asl?"—which, according to the investigator and Heywood, requested Heywood's age, sex,

---

1. The investigator described a chat room as an online forum, similar to a "big conference call," in which "[e]veryone in the chat[ ]room can see what's being typed."

2. According to the investigator, instant messages allow two people who are connected to the chat room to communicate privately.

and location. Before Heywood responded, he gave Gallagher access to his live webcam stream by sending her a "front view of [his] webcam" message, which asked, "Do you want to accept invitation from armyjay." [3] Gallagher accepted and began receiving a webcam stream that showed Heywood masturbating.

¶ 5 While the webcam streamed images to Gallagher's computer, their conversation continued as follows:

armyjay23 (. . . 5:29:40 p.m.): 29 male denver you?

Tina Gallagher (. . . 5:29:52 p.m.): 14 f lakewood here. u lik dtown denver?

Tina Gallagher (. . . 5:30:00 p.m.): ur huge!

armyjay23 (. . . 5:30:14 p.m.): and you shouldnt be watching[*]

Tina Gallagher (. . . 5:30:19 p.m.): u asked me

armyjay23 (. . . 5:30:48 p.m.): i didn't it invited everyone in the room

Tina Gallagher (. . . 5:31:05 p.m.): no it said u invited me to see

armyjay23 (. . . 5:31:20 p.m.): well ill turn it off you could be a cop

Tina Gallagher (. . . 5:31:27 p.m.): im not a fuckin cop

Tina Gallagher (. . . 5:31:36 p.m.): wat the fuck

armyjay23 (. . . 5:31:45 p.m.): show me a pic [4]

Tina Gallagher (. . . 5:31:47 p.m.): k

. . .

Tina Gallagher (. . . 5:32:07 p.m.): tats me

armyjay23 (. . . 5:32:20 p.m.): body pic [5]

Tina Gallagher (. . . 5:32:25 p.m.): k

. . .

Tina Gallagher (. . . 5:32:50 p.m.): teres another one

armyjay23 (. . . 5:33:13 p.m.): are you italian

Tina Gallagher (. . . 5:30:30 p.m.): yes

Tina Gallagher (. . . 5:33:34 p.m.): half

Tina Gallagher (. . . 5:34:19 p.m.): wat r u?

armyjay23 (. . . 5:34:24 p.m.): white

Tina Gallagher (. . . 5:34:39 p.m.): cool

Tina Gallagher ( . . . 5:35:08 p.m.): brb [6]

armyjay23 (. . . 5:35:14 p.m.): i gtg [7]

Tina Gallagher (. . . 5:35:34 p.m.): friend?

Tina Gallagher (. . . 5:35:41 p.m.): ha

Tina Gallagher (. . . 5:35:44 p.m.): dont want to be my friend

armyjay23 (. . . 5:35:45 p.m.): nah youre to young hun

Tina Gallagher (. . . 5:35:50 p.m.): k wateve

Tina Gallagher (. . . 5:35:59 p.m.): bye

armyjay23 (. . . 5:36:06 p.m.): bye

. . .

armyjay23 (. . . 5:36:13 p.m.): hit me up when your 18 lol [8]

Tina Gallagher (. . . 5:36:21 p.m.): tats long ways way

¶ 6 Heywood admitted that he could have terminated Gallagher's access to the webcam stream at any time. But he did not do so until shortly after she wrote "brb," over five minutes following her statement that she was fourteen years old. The webcam showed him masturbating that entire time.

¶ 7 While the investigator was exchanging instant messages with Heywood as Gallagher, he also exchanged sexually graphic instant messages with him posing as tongue_kisser4, whom he identified as a twenty-two-year-old woman. In that role, the investigator arranged to meet Heywood. At the meeting, the investigator arrested him.

3. Defendant's computer contained a webcam, which allowed him to send real time images to other computers.

4. In response to this statement, the investigator sent Heywood a photo of a young woman.

5. In response to this statement, the investigator sent Heywood a second photo of a young woman.

6. The investigator and Heywood testified that "brb" means "be right back."

7. According to the investigator and Heywood, "i gtg" means "I got to go."

8. According to the investigator, "lol" means "laughing out loud."

¶ 8 On appeal, Heywood primarily contends the evidence was insufficient. Because we agree and conclude that dismissal of the charge is required, we do not address any other contention.

## II. Preservation and Standard of Review

■ ¶ 9 Whether the record contains sufficient evidence to support a conviction is subject to de novo review. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). However, because Heywood did not raise sufficiency of the evidence below, we agree with the Attorney General that the judgment will be reversed only for plain error. *See People v. Lacallo*, 2014 COA 78, ¶ 11, 338 P.3d 442 (divided decision noting differing opinions among divisions of this court and majority holding that unpreserved sufficiency of the evidence challenges should be reversed only for plain error).[9]

¶ 10 *Lacallo* is more like this case than it is different. True, in *Lacallo,* interpreting a statutory element preceded "weighing of the probative strength of the evidence against the culpability element to which it relates." *People v. Madson*, 638 P.2d 18, 26 (Colo. 1981). Here, the conduct proscribed by section 18–3–405.4 is unambiguous (as more fully explained in Part IV *infra*). But this difference impacts only the second step in plain error analysis—obviousness—not the rationale for limiting reversal for unpreserved insufficiency claims to plain error.

¶ 11 And, similar to *Lacallo,* where trial counsel raised a different sufficiency argument below but "did not expressly or even impliedly raise the issue now argued," ¶ 6, here Heywood did not raise insufficiency until he appealed.[10] For purposes of applying plain error review, no principle distinguishes between raising an entirely new sufficiency argument on appeal and raising sufficiency on appeal for the first time.

¶ 12 The *Lacallo* division articulated four reasons for applying plain error review: the broad wording of Crim. P. 52(b); the great weight of federal authority; significant, albeit less uniform, supporting authority in many states; and, most importantly, adhering to the policy of conserving judicial resources "by alerting the trial court to a particular issue in order to give the court an opportunity to correct any error." *Lacallo,* ¶ 15 (internal quotation marks omitted).

¶ 13 Because the circumstances presented in this case do not diminish any of these reasons, we apply *Lacallo*'s plain error limi-

---

9. The special concurrence says that *Lacallo* was "wrongly decided" because applying plain error review could result in a conviction being affirmed, although "the prosecution has failed to prove a defendant's guilt beyond a reasonable doubt," which "would be manifestly unjust." But the same could be said of affirming a conviction despite structural errors, which "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.'" *Neder v. United States*, 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Yet, in *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Court rejected the argument that a structural error is outside the scope of Federal Rule of Criminal Procedure 52(b), noting that "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure." Since *Johnson,* numerous federal circuits have held that they are "not obligated to notice even structural errors on plain error review." *United*

*States v. Promise*, 255 F.3d 150, 161 (4th Cir. 2001) (en banc). *See, e.g., United States v. Gomez*, 705 F.3d 68, 74–76 (2d Cir.2013) (A courtroom closure was a structural error, but nonetheless the court refused to reverse because the defendant did not show that the error "affected the fairness, integrity, or public reputation of judicial proceedings."); *Charboneau v. United States*, 702 F.3d 1132, 1138 & n. 3 (8th Cir.2013) (subjecting an unpreserved challenge to a structural error to plain error review and affirming the conviction); *United States v. Turrietta*, 696 F.3d 972, 976 n. 9 (10th Cir.2012) ("Turietta's claim of a 'structural' error has little bearing on the application of the plain error test," and refusing to reverse the conviction under plain error review.); *United States v. Phipps*, 319 F.3d 177, 189 n. 14 (5th Cir.2003) (an unchallenged structural error is subject to plain error review and affirming the conviction despite the error).

10. Like the division in *Lacallo,* we express no opinion whether a general assertion that the evidence was insufficient would, without more, preserve a legal question concerning the interpretation of a statutory element necessary to weigh the evidence.

tation here.[11] *See People v. Smoots,* 2013 COA 152, ¶ 20, —— P.3d ——, 2013 WL 6126733 ("We are not obligated to follow the precedent established by another division, even though we give such decisions considerable deference.") (*cert. granted on other grounds* June 30, 2014).

¶ 14 Plain error occurs where an error is both "obvious and substantial" and "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005) (internal quotation marks omitted). An error may be obvious "if the trial court has erroneously applied statutory law." *People v. Zubiate,* 2013 COA 69, ¶ 24, —— P.3d ——, 2013 WL 1909126.

¶ 15 When reviewing a challenge to the sufficiency of the evidence, a court considers whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. McGlotten,* 166 P.3d 182, 188 (Colo. App.2007). This standard requires that the prosecution be given the benefit of every inference that may fairly be drawn from the evidence. *People v. Vecellio,* 2012 COA 40, ¶ 12, 292 P.3d 1004.

### III. Law

¶ 16 As relevant here, section 18–3–405.4(1)(b) provides:

An actor commits internet sexual exploitation of a child if the actor knowingly importunes, invites, or entices through communication via a computer network . . . or instant message, a person whom the actor knows or believes to be under fifteen years of age and at least four years younger than the actor, to . . . [o]bserve the actor's intimate parts via a computer network . . . or instant message.

¶ 17 "Generally, in order to subject a person to criminal liability for a felony or serious misdemeanor, there must be a con-

currence of an unlawful act (*actus reus*) and a culpable mental state (*mens rea*)." *Hendershott v. People,* 653 P.2d 385, 390 (Colo. 1982). Thus, "[w]hen a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears." § 18–1–503(4), C.R.S. 2013.

¶ 18 A person acts knowingly with respect to an element of an offense when the person is aware that his conduct is of such a nature or that such circumstances exist. § 18–1–501(6), C.R.S.2013. "The mental state of knowingly is a subjective rather than an objective standard and does not include a reasonable care standard." *Oram v. People,* 255 P.3d 1032, 1038 (Colo.2011).

¶ 19 Some statutes protect victims based on age alone. *See, e.g., Gorman v. People,* 19 P.3d 662, 667 (Colo.2000) (contributing to the delinquency of a minor statute does not require knowledge of age); *People v. Davis,* 935 P.2d 79, 86 (Colo.App.1996) (statute defining crime against an at-risk adult does not require knowledge of age). In contrast, section 18–3–405.4(1)(b) requires knowledge or belief as to the victim's age.

¶ 20 Where a challenge to the sufficiency of the evidence requires that a statute be interpreted, the goal is effectuating the General Assembly's intent. *People v. Davis,* 2012 COA 56, ¶ 13, 296 P.3d 219. Determining that intent starts with the statutory language, giving common words and phrases their ordinary meanings. *Vecellio,* ¶ 14. And if a statute does not define a commonly used term, a court may refer to dictionary definitions to determine the ordinary meaning. *People v. Connors,* 230 P.3d 1265, 1267 (Colo.App.2010). Clear and unambiguous statutory language will be applied as written, without further analysis. *Vecellio,* ¶ 14.

¶ 21 Effectuating the General Assembly's intent requires that the statute be

---

11. Although the *Lacallo* division noted that "trial counsel conceded that the evidence was sufficient," ¶ 2, later it expressly declined to resolve the issue based on waiver, because the Attorney General had not so argued. *Id.* at ¶ 6 n. 2.

read and considered as a whole, giving consistent, harmonious, and sensible effect to all its parts. *Id.* In doing so, an interpretation that would render words or phrases superfluous should be rejected. *Connors,* 230 P.3d at 1267.

## IV.   Application

¶ 22 The parties agree that Heywood's initial invitation to the investigator posing as Gallagher—the *actus reus*—alone cannot support his conviction because he had no information suggesting that she was fourteen—the *mens rea*—when he sent it. In fact, Heywood had some information—the age restriction for the chat room—to believe otherwise. *See People v. Casias,* 2012 COA 117, ¶ 41, 312 P.3d 208 ("[T]he ultimate question is whether the defendant had a particular state of mind—the *mens rea*—at the time of the *actus reus....*" (internal quotation marks omitted)).

¶ 23 But the parties disagree about whether the statute proscribes Heywood's conduct after Gallagher told him her age.

- Heywood argues that his failure to terminate Gallagher's webcam access immediately after being told of her age is insufficient evidence that he importuned, invited, or enticed her to continue viewing.

- The Attorney General responds that the evidence was sufficient because by failing to terminate Gallagher's access while continuing their dialogue, he extended the initial invitation after having learned Gallagher's age.

¶ 24 Resolving this dispute requires us first to interpret "importunes," "invites," and "entices," as used in section 18–3–405.4(1). Then we apply that interpretation to the undisputed evidence. After doing both, we conclude that Heywood is correct. .

### A.   Interpretation

¶ 25 Because the statute does not define those terms and they are of common usage, we begin with their dictionary definitions. *See People v. Fioco,* 2014 COA 22, ¶ 19, 342 P.3d 530.

¶ 26 "Importune" means "to press or urge with frequent or unreasonable requests or troublesome persistence"; "to beg, urge, or solicit persistently or troublesomely"; and "to make immoral or lewd advances toward another." *Webster's Third New International Dictionary* 1135–36 (2002). "Invite" means "to offer an incentive or inducement to"; "to request the presence or participation of"; "[to] solicit the company of"; and "to send a formal invitation to." *Id.* at 1190. And "entice" means "to draw on by arousing hope or desire" and "to draw into evil ways." *Id.* at 757.

¶ 27 These definitions show that section 18–3–405.4(1)(b) is unambiguous. By their common meanings, "importune," "invite," and "entice" require more than merely allowing a person to continue viewing the actor's intimate parts. Had the General Assembly intended more broadly to prohibit allowing a person under the age of fifteen to view the actor's intimate parts through a computer network, it could have said so. *See People v. Moore,* 2013 COA 86, ¶ 14, 338 P.3d 348 ("[H]ad the legislature intended that the statute cover victims who were not public employees, it could have done so by express language ....") (*cert. granted on other grounds* Mar. 24, 2014).

¶ 28 The statutory requirement that the actor "importune," "invite," or "entice" the viewer "through communication" also supports this interpretation. "Communication" means "the act or action of imparting or transmitting." *Webster's, supra,* at 460. Thus, reading the statute as a whole, it prohibits an actor from actively and affirmatively importuning, inviting, or enticing a person to view the actor's intimate parts, while the actor knows or believes that the person is less than fifteen years old and at least four years younger than the actor.

### B.   Evidence.

¶ 29 Applying this interpretation, the undisputed evidence does not show that Heywood committed an act which the statute prohibits contemporaneously with the culpable mental state. The prosecution did not offer any evidence that Heywood believed Gallagher was younger than fifteen years old

when he invited her to view the webcam. Nor did it offer any evidence that he "importuned," "invited," or "enticed" her to continue viewing after she said that she was fourteen years old.

¶ 30 Although their "communication via a computer network" continued, the transcript of those communications shows that Heywood referred to the webcam stream only twice after having been told of Gallagher's age. First, he said that she "shouldn't be watching." Second, he said that he would "turn it off." These two statements do not fit within the common meanings of "importune," "invite," or "entice." *See People v. Rockne*, 2012 COA 198, ¶ 24, 315 P.3d 172 ("The interpretation of a written transcript is a question of law subject to de novo review on appeal.").

¶ 31 Still, the Attorney General argues that by failing to terminate Gallagher's access to the webcam stream after learning Gallagher's claimed age, Heywood "continu[ed] his initial invitation," thereby satisfying the statute's requirement that an act and a specific mental state concur. The Attorney General has cited no authority supporting this argument, nor have we found any in Colorado.

¶ 32 True, under some statutes, "physical conduct might begin first but continue until the requisite state of mind occurs," thus creating the required concurrence between an act and a culpable mental state. Wayne R. LaFave, *Substantive Criminal Law* § 6.3(a) n. 5 (2d ed. 2003). But unlike statutes that create ongoing offenses, such as possession of contraband or stolen property, section 18–3–405.4(1)(b) prohibits an invitation, which is a discrete event. *See United States v. Southerland*, 405 F.3d 263, 268–69 (5th Cir. 2005) ("In determining whether the flight and the offense of conviction are connected sufficiently, we look primarily to any evidence of the defendant's state of mind while fleeing" and conclude that the defendant's state of mind in fleeing related to ongoing offenses of automobile theft and drug possession, not a bank robbery committed two months earlier.). For these reasons, Heywood did not continue to invite Gallagher to

view his webcam stream merely by failing to disconnect her access to it.

¶ 33 Thus, we conclude that the record does not contain sufficient evidence for any rational juror to conclude that Heywood "importuned," "invited," or "enticed" Gallagher to view his intimate parts after having been told her age. As a result, we further conclude that the first requirement for plain error reversal exists.

¶ 34 In so concluding, we note that the *Lacallo* division left open whether to require a greater showing at this stage because sufficiency was unpreserved. *See Lacallo*, ¶ 21 ("[W]e save for another day deciding whether analyzing either of the other questions is different when sufficiency arises for the first time on appeal.").

¶ 35 The federal circuits are divided on this question. *See id.* at ¶ 20 n. 12. We are persuaded not to embark on what may be a futile effort by the following observations in *United States v. White*, 1 F.3d 13, 17 (D.C.Cir.1993):

> We admit we are not sure exactly what standard is implied by plain error review on a sufficiency of the evidence challenge. Presumably review should be more deferential than under the usual standard under which we determine only "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). *But it is hard to imagine that more deferential standard.*

(First and third emphasis added.) *See also People v. McBride*, 228 P.3d 216, 226 (Colo. App.2009) (The *Jackson* standard "is so high . . . that we apply it even where (as here) a defendant failed to preserve the challenge by raising it in the trial court.").

¶ 36 Obviousness, the second plain error requirement, presents a closer question. Because the operative statutory terms have never been interpreted, no "previous case law would have alerted the court" to the error. *People v. Mendoza*, 313 P.3d 637, 641 n. 4 (Colo.App.2011). Even so, we conclude

that the error was obvious, for the following reasons:

- The contemporaneous intent requirement has always been a feature of criminal law. *See* LaFave, *Substantive Criminal Law*, at § 6.3(a) ("With those crimes which require some mental fault (whether intention, knowledge, recklessness, or negligence) in addition to an act or omission, it is a basic premise of Anglo–American criminal law that the physical conduct and the state of mind must concur.").
- The operative terms in the statute have common and ordinary meanings.
- The statute is unambiguous.

*See People v. Pollard*, 2013 COA 31, ¶ 40, 307 P.3d 1124 ("Ordinarily, for an error to be this 'obvious,' the action challenged on appeal must contravene ... a clear statutory command...."); *see also People v. Mosley*, 167 P.3d 157, 161–62 (Colo.App.2007).

¶ 37 Finally, as to the third plain error requirement—whether the error casts serious doubt on the reliability of the judgment of conviction—the *Lacallo* majority did not address this requirement because it concluded that the error, if any, was not obvious. *Lacallo*, ¶ 21. Unlike in *Lacallo*, here both the first and second plain error requirements have been satisfied. Thus, we must address application of the third factor to an unpreserved sufficiency claim.

¶ 38 But why would the nature of the error affect this third requirement? In many plain error cases involving all types of unpreserved errors, our supreme court has asked the same question: whether the error undermines " 'the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.' " *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116 (quoting *Miller*, 113 P.3d at 750). Because an unpreserved sufficiency claim is no different than any other unpreserved error, we decline to depart from this standard.

■ ¶ 39 Therefore, we conclude that where the evidence is obviously insufficient

for a rational trier of fact to find that an element of an offense has been proven beyond a reasonable doubt, the third requirement is satisfied.

## V. Conclusion

¶ 40 The judgment is reversed and the case is remanded to the trial court with directions to enter judgment of acquittal.

JUDGE PLANK * concurs.

JUDGE GABRIEL specially concurs.

JUDGE GABRIEL specially concurring.

¶ 41 I agree with the majority that the evidence in this case, even when viewed as a whole and in the light most favorable to the prosecution, is insufficient to establish that Heywood knowingly importuned, invited, or enticed, through communication via a computer network or instant message, a person whom Heywood knew or believed to be under fifteen years of age to observe his intimate parts via a computer network or instant message. Accordingly, I agree that the judgment in this case should be reversed.

¶ 42 For two reasons, however, which I discuss in more detail below, I cannot join the majority's analysis. First, in my view, *People v. Lacallo*, 2014 COA 78, 338 P.3d 442, on which the majority relies to conduct a plain error analysis, marked an unnecessary departure from well-settled Colorado law and was wrongly decided. Second, even were I to believe that *Lacallo* was correctly decided, *Lacallo* itself stated that it was limited to the "unusual" and "narrow" circumstances in which "trial counsel conceded that the evidence was sufficient ..., and appellate review of the evidence depends on a legal interpretation of a statutory element raised for the first time by appellate counsel." *Id.* at ¶ 2 & n. 1, 338 P.3d at 444 & n. 1. Those are not the facts here, however, and, thus, *Lacallo* does not apply in this case. And to the extent that the majority relies on *Lacallo* for the proposition that all unpreserved sufficiency claims are to be reviewed for plain

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

error, the majority here ensures the very sea change that the *Lacallo* majority said it was *not* adopting. *See id.* at ¶ 2 n. 1, 338 P.3d at 444 n. 1 (disagreeing with the dissent's suggestion that the *Lacallo* majority's analysis had effected a "sea change" in the applicable law).

¶ 43 Because I cannot agree with the majority's approach, which I believe will lead to unjust results, I respectfully concur in the judgment only.

## I. *Lacallo* Was Wrongly Decided

¶ 44 In his thorough and thoughtful dissent in *Lacallo*, ¶¶ 55–72, 338 P.3d at 453–58, Judge Román detailed the many reasons why he believed that the majority opinion there was incorrect. I fully agree with his views and add only a few further thoughts.

¶ 45 First, with all respect, I cannot discern the principle that would allow an appellate court properly to say that the prosecution has failed to prove a defendant's guilt beyond a reasonable doubt (or to ignore whether it did) and then hold that the conviction should be affirmed anyway. I think, at root, our obligation as jurists is to do justice, and such a holding would be manifestly unjust.

¶ 46 Nor can I discern the principle, endorsed by the *Lacallo* majority, that would justify an appellate court's skipping over the question of whether the evidence was sufficient and deciding first whether any error was obvious. I agree with Judge Román that review in that manner seems to assume without deciding that an error occurred because review under the Colorado plain error standard begins with a determination of whether there was error. *See id.* at ¶ 67, 338 P.3d at 455 (Román, J., dissenting); *see also People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (noting that plain error addresses error that is both obvious and substantial and that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction). To the extent that such review does not assume error, however, but rather simply allows an appellate court to affirm a conviction based on insufficient evidence as long as the insufficiency was not obvious, for the reasons noted

above, I cannot see the policy rationale that would countenance so unjust a result.

¶ 47 Second, to the extent that the *Lacallo* majority relied on the interests of finality, I do not agree that those interests alone suffice to let stand a manifestly unjust result. *See Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (noting that in appropriate cases, the principles of comity and finality must yield to "the imperative of correcting a fundamentally unjust incarceration"); *accord Murray v. Carrier*, 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

¶ 48 Third, to the extent that the *Lacallo* majority relied on federal court precedent, I do not find the majority's reasoning persuasive. As Judge Román correctly observed, the federal courts apply a fourth plain error prong that the Colorado courts have not adopted. *See id.* at ¶¶ 65–66, 338 P.3d at 455 (Román, J., dissenting). Moreover, many federal cases that have applied a plain error standard in the context of a sufficiency claim have noted that although the plain error standard "technically" applied, in reality, its application mirrored the de novo review that would be employed had the error been preserved, because a conviction in the absence of sufficient evidence is always plain error. For example, in *United States v. Valenzuela*, 484 Fed.Appx. 243, 246–47 (10th Cir.2012) (quoting *United States v. Gonzalez–Huerta*, 403 F.3d 727, 732 (10th Cir.2005) (en banc), and *United States v. Kaufman*, 546 F.3d 1242, 1263 (10th Cir.2008); other citations omitted), the Tenth Circuit stated:

> Valenzuela contests the sufficiency of the evidence on both counts of conviction, but he did not move for acquittal in the district court. *In this circumstance, our review technically is for plain error.* "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *However, as a practical matter, the standard actually applied is the same as if there had been a motion for acquittal—de novo—because a conviction in the absence of sufficient evidence is plainly an error affecting substantial*

*rights* provided that "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

(Emphasis added.)

¶ 49 I fully agree that a conviction in the absence of sufficient evidence would always be plain error. Accordingly, I perceive no reason to depart from the principle, which I believed to be well-settled before *Lacallo,* that we will address insufficiency claims raised for the first time on appeal without applying plain error review. *See id.* at ¶¶ 59–63, 338 P.3d at 453–54 (Román, J., dissenting) (collecting authorities).

¶ 50 Fourth, I fail to perceive why we would require a defendant in a criminal case to file a motion for a judgment of acquittal to preserve an issue for appeal when we do not require similar preservation in civil cases. *See Bailey v. Airgas–Intermountain, Inc.,* 250 P.3d 746, 752 (Colo.App.2010) (rejecting the defendants' assertion that the plaintiffs could not raise an issue on appeal because they failed to raise it in their C.R.C.P. 59 post-trial motion). Such a result seems anomalous to me, given the fact that the stakes in a criminal case are the defendant's life or liberty, while the stakes in a civil case, although potentially substantial, are generally less weighty.

¶ 51 Lastly, I agree with Judge Román that *Lacallo* signaled a major change in the law and would almost certainly create a new line of Crim. P. 35(c) ineffective assistance of counsel claims, *see Lacallo,* ¶¶ 70–71, 338 P.3d at 456–57 (Román, J., dissenting), and for no purpose that I can perceive. Reviewing insufficiency claims raised for the first time on appeal places a reasonable burden on us, and doing so generally ends the case. Moreover, in my view, reviewing a judgment to ensure that no one sits in prison when the prosecution has failed to prove every element of the offense beyond a reasonable doubt is an important part of our job as appellate judges. *Cf. Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (noting that the standard of proof beyond a reasonable doubt plays a vital role in the American scheme of criminal procedure because it operates to give concrete substance to the presumption of innocence to ensure against unjust convictions).

¶ 52 For all of these reasons, I respectfully believe that *Lacallo* was wrongly decided, and thus, I cannot join the majority's opinion here.

II. The Majority Has Misapplied *Lacallo*

¶ 53 Even if *Lacallo* were correctly decided, however, I still could not join the majority's analysis here because I believe the majority has misapplied—and improperly expanded the reach of—*Lacallo*'s holding.

¶ 54 As noted above, in *Lacallo,* the majority stated that it was considering whether to apply plain error review to a sufficiency of the evidence challenge under "narrow circumstances," namely, where "trial counsel conceded that the evidence was sufficient ..., and appellate review of the evidence depends on a legal interpretation of a statutory element raised for the first time by appellate counsel.' *Lacallo,* ¶ 2, 338 P.3d at 444. The *Lacallo* majority further stated, "Because of the unusual circumstances presented, we respectfully disagree with the dissent's suggestion that we have adopted a 'sea change *Id.* at ¶ 2 n. 1, 338 P.3d at 444 n. 1.

¶ 55 Here, the majority fails to apply these important limitations on the reach of *Lacallo*'s holding and states instead, "[B]ecause Heywood did not raise sufficiency of the evidence below, we agree with the Attorney General that the judgment will be reversed only for plain error." The majority then cites *Lacallo* in support of this proposition.

¶ 56 For the reasons stated above, *Lacallo* does not support the broad proposition for which the majority cites it. Moreover, *Lacallo*'s limited holding does not apply on the facts of this case. Unlike in *Lacallo,* we have no concession by Heywood that the evidence was sufficient. Moreover, in my view, our review here does not depend on a legal interpretation of a statutory element raised for the first time on appeal. To the contrary, the majority concludes that section 18–3–405.4, C.R.S.2013, is unambiguous and that the operative terms have common and ordinary meanings, which the majority defines by reference to the dictionary. Indeed, the

parties here do not dispute any of the applicable statutory terms, and I see nothing in Heywood's appellate briefs that raises for the first time on appeal a new issue concerning the legal interpretation of the operative statute. Rather, he contends that under the plain and unambiguous meaning of that statute, the evidence against him was insufficient. In short, in my view, the parties here are not disputing the meaning of the statute. They are disputing the application of the unambiguous statutory standard to the facts of this case.

¶ 57 In this regard, this case is distinguishable from *Lacallo*. There, the majority considered the meaning of "public disturbance" under section 18–9–101(2), C.R.S.2013. The majority began by observing that no Colorado cases had either interpreted that phrase or provided a commonly accepted definition of the term "public." *Lacallo*, ¶ 29, 338 P.3d at 450. The majority then stated that in light of the absence of legislative guidance or commonly accepted definitions, "determining the meaning of 'public disturbance' under existing Colorado authority would be difficult." *Id.* at ¶ 30, 338 P.3d at 450. Thus, the majority concluded that the trial court's alleged error regarding its construction of "public disturbance" could not be regarded as plain or obvious. *Id.*

¶ 58 The facts in this case are substantially different. Here, unlike in *Lacallo*, the majority has found that the statute at issue is *un*ambiguous, and the majority had no difficulty defining the statute's operative terms by reference to common and easily accessible dictionary definitions.

¶ 59 Accordingly, even if *Lacallo* were good law, by its very terms, it does not apply here, and the majority's opinion effects an unwarranted and in my view misguided expansion of *Lacallo*'s already incorrect analysis.

### III. Conclusion

¶ 60 For these reasons, I respectfully concur in the judgment only.