# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 06-3772

_____

United States of America,             *

                              *

      Plaintiff - Appellee,    *

                              *   Appeal from the United States

v.                      *   District Court for the

                              *   Western District of Arkansas.

Brian L. Brown,           *

                              *

      Defendant - Appellant.    *

_____

Submitted: January 14, 2008
Filed: June 10, 2008

_____

Before LOKEN, Chief Judge, MURPHY, Circuit Judge, and JARVEY,[*] District
Judge.

_____

LOKEN, Chief Judge.

When Brian Brown's conviction and concurrent life sentences for kidnaping and aggravated sexual abuse of a ten year-old child were affirmed on appeal, United States v. Brown, 330 F.3d 1073 (8th Cir.), cert. denied, 540 U.S. 975 (2003), Brown filed a motion for post-conviction relief under 28 U.S.C. § 2255. After an evidentiary

_____

[*]The HONORABLE JOHN A. JARVEY, United States District Judge for the Southern District of Iowa, sitting by designation.

hearing, the district court[1] denied the motion, concluding that Brown's ten claims were procedurally barred and substantively without merit. Brown appealed, and the district court granted a certificate of appealability on two constitutional claims, an alleged violation of the Sixth Amendment's Confrontation Clause in permitting the victim to testify from outside the courtroom via closed circuit television, and the alleged ineffective assistance of appellate counsel. Limiting our review to the issues on which the certificate was granted, see 28 U.S.C. § 2253(c), we affirm.

## I. The Confrontation Clause Claim

Less than a month before trial, Brown filed motions to discharge his appointed attorney and to allow him to represent himself. Ten days before trial, after a hearing, the district court granted the motions, finding that Brown had knowingly and voluntarily waived his right to counsel. The court also appointed a new attorney to serve as Brown's standby counsel. That same day, the government filed a motion to allow the child victim, now eleven years old, to testify from outside the courtroom "by two-way closed circuit television." The motion noted that Brown would be proceeding *pro se* and stated that the child's therapist advised "that the child would be traumatized by seeing the perpetrator in the courtroom and answering his questions face-to-face." Brown did not respond to this motion.

Immediately before trial, the Court held a hearing on the government's motion, attended by Brown, standby counsel, and the prosecutors, but not by the child. The child's therapist, psychologist Amy Hooper, was the only witness. Ms. Hooper testified that she had counseled the victim in eighteen one-hour sessions the previous four-and-one-half months. In response to questions by the prosecutor, by Brown, and

---

[1]The HONORABLE HARRY F. BARNES, United States District Judge for the Western District of Arkansas, adopting the Report and Recommendations of the HONORABLE BOBBY E. SHEPHERD, United States Magistrate Judge for the Western District of Arkansas, now United States Circuit Judge for the Eighth Circuit.

then by the court, Hooper opined that it "could be therapeutic for [the victim] to have her say about what happened to her," but if the child was questioned by Brown face-to-face in open court, "I think she would be so emotionally distraught I don't know if you could get any meaningful testimony from her . . . ." Hooper testified that the victim had said, "I'm worried I would say something he wouldn't like and then he would come slap me or punch me to make me shut up because that's what he did in the truck when I screamed."[2] Hooper also opined that the victim's testimony would be more accurate if her contact with Brown was limited. At the conclusion of Hooper's testimony, the district court granted the government's motion, finding "that there is a substantial likelihood that if the victim were subject to confrontation by Mr. Brown in a courtroom she would suffer severe emotional harm and her mental health would be jeopardized."

Trial commenced that day. On the fourth day of trial, the government advised that it was ready to call the victim and an FBI technician was "setting up the two-way circuitry television" in a room outside the courtroom. The prosecutor proposed to question the child in that room with an exhibit book while Brown remained in the courtroom with the jury, questioning the child from a podium and seeing her face on the television. An audio system would enable the child to hear Brown's questions, and those in the courtroom to hear her responses. The court approved this procedure over Brown's continuing Sixth Amendment objection. Before the victim testified, the court advised the jury that questioning by Brown would occur "not face to face but through a closed two-way TV network," and that the jury should not allow this to prejudice Brown or to interfere with the jury's understanding of the testimony.

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

---

[2]For a brief summary of what the young victim endured during her three-day ordeal, see Brown, 330 F.3d at 1076.

against him." In <u>Maryland v. Craig</u>, 497 U.S. 836, 857 (1990), the Supreme Court held that the Confrontation Clause did not bar the Maryland trial court from permitting a victim of child abuse to testify from outside the courtroom by closed-circuit, one-way television provided "the essence of effective confrontation" was preserved and the court made "a proper finding of necessity." The Supreme Court carefully defined a case-specific finding of necessity, requiring the trial court to find (i) that use of the closed-circuit television procedure "is necessary to protect the welfare of the particular child witness," (ii) that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," and (iii) "that the emotional distress suffered by the child witness in the presence of the defendant is more than . . . mere nervousness or excitement or some reluctance to testify." <u>Id.</u> at 855-56 (quotation omitted). Brown argues that the trial court violated the Confrontation Clause as construed in <u>Craig</u>.

The district court concluded that Brown's Confrontation Clause claim, though preserved at trial, was procedurally barred from post-conviction review because it was not raised on direct appeal. Brown does not challenge the ruling that the issue was procedurally defaulted on direct appeal. Rather, he argues, as he did in the district court, that the issue is not procedurally barred because the ineffective assistance of his appellate counsel in not raising the issue constitutes cause that excuses the procedural default. To establish ineffective assistance of appellate counsel, Brown must show that counsel's performance was deficient, and prejudice from that deficiency. The deficient performance standard is rigorous. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). Therefore, absent contrary evidence, "we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." <u>Roe v. Delo</u>, 160 F.3d 416, 418 (8th Cir. 1998) (quotation omitted). The prejudice standard is equally rigorous. Brown must show that "the result of the proceeding would have been different" had he raised the Confrontation Clause issue on direct appeal. <u>Becht v. United States</u>, 403 F.3d 541,

546 (8th Cir. 2005), cert. denied, 546 U.S. 1177 (2006). Though Brown's appeal brief argued ineffective assistance generally, it failed to address these issues.

On the merits of his Confrontation Clause claim, Brown argues that the district court violated Craig by permitting child victim testimony from outside the courtroom "for reasons other than the effects upon the witness of direct confrontation with the Defendant." He relies on portions of therapist Hooper's testimony and on this court's decision in United States v. Bordeaux, 400 F.3d 548, 553 (8th Cir. 2005), where we held, citing United States v. Turning Bear, 357 F.3d 730, 737 (8th Cir. 2004), that the Confrontation Clause was violated "because the district court had not found, as required by Craig, that the trauma caused by the presence of the defendant was the dominant element preventing the child witness from testifying in open court."

Lacking contrary argument, we presume this is how appellate counsel would have argued the Confrontation Clause issue had it been raised on direct appeal. But this case differs dramatically from Bordeaux and Turning Bear, where the child victims began testifying in open court and became distressed. Here, the government made a pretrial motion only after Brown asserted his right to self-representation. Self-representation would include cross examining the victim, which meant that face-to-face confrontation with Brown while the victim testified would subject the child not only to his presence in the courtroom, but also to his questioning her, face-to-face, about the traumatic events in question. The government's motion emphasized this concern, and psychological trauma from this personal contact with Brown was the dominant focus of therapist Hooper's testimony. Thus, while the district court's case-specific finding -- substantial likelihood of emotional harm "if the victim were subject to confrontation by Mr. Brown in a courtroom" -- was arguably too general under Bordeaux and Turning Bear, appellate counsel (who had served as Brown's standby counsel at trial) knew that the court's dominant focus in making this finding was on the trauma Brown personally would cause, as Craig requires, and knew that this would be apparent from the trial record on appeal. See Fields v. Murray, 49 F.3d 1024, 1036

(4th Cir. 1995) (en banc) ("It is far less difficult to conclude that a child sexual abuse victim will be emotionally harmed by being personally cross-examined by her alleged abuser than by being required merely to testify in his presence."). In these circumstances, appellate counsel's performance was not deficient, and Brown was not prejudiced, by the failure to raise the Confrontation Clause issue on direct appeal. Accordingly, the issue is procedurally barred.

Brown further argues that permitting the child to testify from outside the courtroom by means of a one-way, closed-circuit television system violated his right to due process. This is a distinct constitutional claim "not within the scope of the certificate of appealability." Fields v. United States, 201 F.3d 1025, 1026 n.2 (8th Cir. 2000). Accordingly, we may not consider it. 28 U.S.C. § 2253(c).[3]

## II. Ineffective Assistance of Appellate Counsel

The district court granted a certificate of appealability on the claim that Brown's appellate counsel provided ineffective assistance in not raising on direct appeal "the objections contained in this § 2255 proceeding." On appeal, Brown first

---

[3]Though the government's pretrial motion and the trial colloquies concerning this issue referred to a two-way closed-circuit system, the government stipulated at the § 2255 hearing that in fact it installed a one-way video system, so that the victim could hear Brown's voice but not see Brown on a television monitor. Brown argued to the district court that use of this system violated 18 U.S.C. § 3509(b)(1), a provision of the statute enacted following the Supreme Court's decision in Craig to govern federal criminal proceedings. The certificate of appealability referenced this statutory issue, but Brown did not argue the issue in his brief on appeal. In any event, the issue warrants no relief. Even if § 3509(b)(1) mandates a two-way system when the defendant is representing himself and will question the child victim, which we seriously doubt, Brown did not object to the system installed, there is no showing any error was either plain (that is, "obvious") or prejudicial, see United States v. Olano, 507 U.S. 725, 734-36 (1993), and thus appellate counsel's failure to raise the issue on direct appeal was not ineffective assistance of counsel.

argues that appellate counsel's performance was prejudicially deficient in not arguing on direct appeal that Brown was entitled to relief under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), because that would have entitled Brown to the benefit of retroactive application of the later Supreme Court decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005). This argument is without merit. <u>See</u> <u>Never Misses a Shot v. United States</u>, 413 F.3d 781, 783-84 (8th Cir. 2005).

Finally, Brown argues that counsel's errors in not raising any of the claims presented in his § 2255 motion constitutes "cumulative error" entitling him to post-conviction relief. Brown acknowledges that we have repeatedly rejected the cumulative error theory of post-conviction relief. <u>See</u> <u>Middleton v. Roper</u>, 455 F.3d 838, 851 (8th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 980 (2007). As a panel, we are of course bound by these decisions. Moreover, most of Brown's § 2255 claims were not preserved at trial, and the district court concluded that all were without merit. The contention that an appellate counsel's performance was deficient because he weeded out many issues of this variety is, in a word, unsound. <u>See, e.g.</u>, <u>Garrett v. United States</u>, 78 F.3d 1296, 1306 (8th Cir.), <u>cert. denied</u>, 519 U.S. 956 (1996).

The order of the district court dated July 13, 2006, is affirmed.

_____