# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2308

_____

| | | |
|---|---|---|
| Donovan New, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 17, 2011
Filed: August 31, 2011

_____

Before COLLOTON and BENTON, Circuit Judges, and KOPF,[1] District Judge.

_____

COLLOTON, Circuit Judge.

After he was convicted of two counts of involuntary manslaughter, Donovan New filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The district court[2] denied the motion, and we affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

New is a member of the Oglala Sioux Indian tribe. On June 17, 2005, New was traveling in a vehicle with his father and cousin on a highway within the Pine Ridge Indian Reservation in South Dakota. New and his cousin had been drinking heavily that day. The driver lost control of the vehicle while it was moving at approximately 89 miles per hour – 24 miles per hour above the posted speed limit – and the car went into a ditch, rolled twice, and landed in a field. The impact of the crash threw New and his cousin from the vehicle and trapped New's father in the back seat. New's father and cousin died as a result of the accident.

An ambulance transported New to a local hospital, where he informed a police officer that his cousin was driving at the time of the crash. New was flown by helicopter to the Rapid City Regional Hospital, where a blood test indicated that New had marijuana in his system and a blood alcohol level of .320, well above the legal limit for motor vehicle operators in South Dakota. Later that day, hospital personnel gave New a variety of medications due to his spinal injuries, difficulty breathing, and chest and shoulder pain. Special Agent Charles Cresalia of the Federal Bureau of Investigation interviewed New in his hospital room the following afternoon. New admitted to Cresalia that he had been driving at the time of the crash and had consumed alcohol earlier that day. Several weeks later, New traveled to the Bureau of Indian Affairs ("BIA") building in Pine Ridge, South Dakota, to reclaim property that he had left at the accident scene. While he was there, New told BIA Special Agent Fred Bennett that he was driving at the time of the crash, although he also said that others were telling him that he was not the driver.

In late July 2005, a federal grand jury charged New with two counts of involuntary manslaughter, in violation of 18 U.S.C. §§ 1112 and 1153. New moved to suppress his statements to Special Agent Cresalia on the basis that they were involuntary and obtained in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court denied the motion. At trial, a jury heard evidence from various lay witnesses, law enforcement personnel, doctors, and

experts in accident reconstruction. New testified that he had been drinking prior to the accident on June 17, but had no recollection of the accident itself and could not recall whether he was driving at the time of the crash. The jury found New guilty on both counts of involuntary manslaughter, and the district court sentenced him to consecutive terms of 72 months' imprisonment on each count. New raised several challenges to his convictions and sentence on direct appeal, and this court affirmed. *United States v. New*, 491 F.3d 369 (8th Cir. 2007).

New filed his motion pursuant to 28 U.S.C. § 2255 in August 2008, arguing that his trial and appellate counsel had been constitutionally ineffective in six respects. The district court denied New's motion with regard to five of his claims and referred the sixth claim to a magistrate judge for an evidentiary hearing. That claim concerned the failure of New's trial counsel to obtain an audio expert to examine the authenticity of the tape recording of New's interview with Special Agent Cresalia. The magistrate conducted a hearing and recommended that the district court deny New's motion. The district court agreed, and thus denied New's § 2255 motion in its entirety. The court granted New a certificate of appealability with respect to four issues. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). We review the district court's legal conclusions *de novo* and its findings of fact for clear error. *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005).

First, New contends that he was deprived of his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to litigate properly his motion to suppress the statements he made to Special Agent Cresalia. Whether a defendant was deprived of effective assistance of counsel is a mixed question of law and fact that we review *de novo*. *Id.* We review a claim of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must make two showings to obtain relief:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Our scrutiny of counsel's performance must be "highly deferential." *Id.* at 690.

New asserts that his trial counsel should have argued that Special Agent Cresalia's warrantless entry into New's hospital room constituted a "search" within the meaning of the Fourth Amendment, and was therefore a violation of the Fourth Amendment's prohibition on unreasonable searches and seizures. Whether the entry was a Fourth Amendment "search" depends upon whether New had a reasonable expectation of privacy in the room. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001). New acknowledges a split of authority on the question whether a patient has a reasonable expectation of privacy in a hospital room, and this court has not specifically addressed the issue. *See New*, 491 F.3d at 374 n.3. *Compare, e.g.*, *People v. Courts*, 517 N.W.2d 785, 786 (Mich. Ct. App. 1994), *with State v. Stott*, 794 A.2d 120, 127-28 (N.J. 2002), *and People v. Brown*, 151 Cal. Rptr. 749, 754 (Cal. Ct. App. 1979).

A failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services "outside the wide range of professionally competent assistance" sufficient to satisfy the Sixth Amendment. *See Strickland*, 466 U.S. at 690. This court has held that an attorney's failure to anticipate changes in the law does not constitute constitutionally ineffective assistance. *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999). Then in *Fields v. United States*, 201 F.3d 1025 (8th Cir. 2000), this court reached the same conclusion about unsettled

issues. We denied relief to a § 2255 movant who argued that his attorney's failure to object to the district court's jury instructions deprived him of effective assistance of counsel. *See id.* at 1026. We noted that neither the Eighth Circuit nor the Supreme Court had decided whether the jury instructions at issue were adequate, and that two other courts of appeals had addressed the issue and come to contrary conclusions. We then said the following:

> Given this split of authority at the time Fields was tried, and the complete lack of Eighth Circuit or Supreme Court authority on the subject, it must be said that counsel's performance fell within the wide range of professionally competent assistance. . . . If counsel's failure to anticipate a change in the law will not establish that counsel performed below professional standards, *then counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts surely cannot render counsel's performance professionally unreasonable.* Moreover, Fields has not directed our attention to Supreme Court or Eighth Circuit precedent (and our research has located none) that can be said to clearly portend the law . . . as Fields would have us state it.

*Id.* at 1027-28 (emphasis added) (internal quotation and citations omitted); *see also Givens v. Cockrell*, 265 F.3d 306, 309-10 (5th Cir. 2001); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999); *Dutton v. Brown*, 812 F.2d 593, 598 & n.4 (10th Cir. 1987) (en banc).

New has not identified any controlling legal authority that directly supported his Fourth Amendment argument, or any controlling authority that "clearly portend[s]" that such an argument would have been successful. *Fields*, 201 F.3d at 1028. We therefore conclude that New has not made a showing that his trial counsel's performance was deficient.

New also argues that his trial counsel was ineffective because he failed to argue that Special Agent Cresalia violated New's Sixth Amendment right to counsel by

interviewing him without an attorney present. The Sixth Amendment right to counsel does not attach, however, until the government commences adversary judicial criminal proceedings against a defendant. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). There is no assertion here that such proceedings were underway at the time of New's conversation with Special Agent Cresalia. Because New could not have been prejudiced by his attorney's failure to make a meritless argument, we reject the contention.[3]

The second issue New raises on appeal is that he was denied effective assistance of appellate counsel because his attorney failed to argue that the evidence was insufficient to support his convictions. The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal. *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998). "[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008) (internal quotation omitted).

There were sound reasons for New's attorney to omit a challenge to the sufficiency of the evidence. A defendant challenging the sufficiency of the evidence supporting his convictions faces a high bar. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the jury's verdict, and we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Birdine*, 515 F.3d 842, 844 (8th Cir. 2008). There was substantial evidence of New's guilt in this case, including his statements

---

[3]New also asserts that his trial counsel was ineffective because he failed to investigate whether New had requested the presence of counsel during his conversation with Special Agent Cresalia, and failed to hire an expert audio technician to determine whether Cresalia had tampered with the recording. New did not obtain a certificate of appealability on these issues, and we therefore decline to address them. *Pruitt v. United States*, 233 F.3d 570, 572-73 (8th Cir. 2000).

to Special Agents Cresalia and Bennett, and testimony by an expert in accident reconstruction.

New acknowledges this evidence, but argues that no reasonable jury could have believed that his statements to the agents were reliable or that the government's accident reconstruction expert was more credible than the defense's accident reconstruction expert. This contention is underwhelming: questions of credibility are reserved for the jury, which is "free to believe the testimony of any witness in its entirety, or to reject that testimony as untrustworthy." *United States v. Montano*, 506 F.3d 1128, 1133 (8th Cir. 2007) (internal quotation omitted). New's appellate counsel did not act deficiently by failing to include a weak challenge to the sufficiency of the evidence among the seven other claims he raised on direct appeal. *See Brown*, 528 F.3d at 1033 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.") (internal quotation omitted).

Third, New argues that the district court violated his right to due process of law by declining to order an evidentiary hearing on four of the six ineffective assistance claims raised in his § 2255 motion. Of the four claims identified, the district court did order an evidentiary hearing on one – trial counsel's failure to obtain an expert opinion regarding the authenticity of the audiotape recording of New's conversation with Special Agent Cresalia. We review the district court's decision to refuse an evidentiary hearing on the other three claims for abuse of discretion, although "review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (internal quotation omitted).

While "[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show

that [he] is entitled to no relief," no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (second alteration in original) (internal quotations omitted). New does not specify why the district court should have held evidentiary hearings on these three claims, and our review of the record satisfies us that the record established conclusively as a matter of law that he was not entitled to relief.[4]

The judgment of the district court is affirmed.

_____

[4]New obtained a certificate of appealability on a claim that he was denied effective assistance of counsel because his trial counsel failed to request a special jury instruction concerning diminished mental capacity. But New acknowledges in his brief on appeal that this claim lacks merit, and we agree. *See United States v. McMillan*, 820 F.2d 251, 258 (8th Cir. 1987) (noting that voluntary intoxication is not a defense to general intent crimes, including the involuntary manslaughter offense codified at 18 U.S.C. § 1112).