MURPHY, Circuit Judge.
Sandra Calkins pled guilty to bank fraud in violation of 18 U.S.C. § 1344. The district court[1] sentenced Calkins to 66 *897 months imprisonment, five years of supervised release, and over 8.6 million dollars in restitution. We affirmed Calkins’ sentence on direct appeal. ' She now brings this 28 U.S.C. § 2255 petition alleging ineffective assistance of counsel. The district court denied Calkins’ petition, and we affirm.
At her plea hearing, Calkins admitted that she had acquired loans for her business by providing false financial information to both Central Bank in Eden Prairie and a number of individual investors, and she pled guilty to bank fraud in violation of 18 U.S.C. § 1344. Before sentencing Cal-kins had asserted that the total loss amount from the fraud was $1,162,000, but at her sentencing hearing she took responsibility for the $8,675,917.10 loss amount calculated in the presentence investigation report (PSR), asserting only that the PSR’s calculation should be reduced based on interest payments she had made to the fraud victims. The district court rejected Calkins’ argument, applied a 20 point increase to her offense level for a loss amount exceeding 7 million dollars, and calculated a guideline range of 78 to 97 months based on a total offense level of 28 and criminal history category I. Calkins’ counsel argued for leniency under 18 U.S.C. § 3553(a), noting Calkins’ advanced age and ability to pay restitution. The district court imposed a below guideline sentence of 66 months imprisonment and five years of supervised release. It also ordered $8,675,917.10 in restitution.
After we affirmed Calkins’ sentence on direct appeal, Calkins brought a § 2255 petition alleging ineffective assistance of counsel. She argued, among other things, that her trial counsel should have challenged the loss amount calculated in the PSR and requested an evidentiary hearing to determine whether each of the individual investors whose losses were included in the total loss amount had relied on Cal-kins’ fraudulent financial statements. The district court dismissed her § 2255 petition and denied a certificate of appealability.
We granted Calkins a certificate of ap-pealability on whether her “counsel provided ineffective assistance by failing to obtain and present evidence related to loans by individual investors, and by not challenging the loss amount to the extent it was based on losses by investors who were not shown to have relied on the fraudulent financial statements.”
We review de novo “post conviction ineffective assistance claims brought under § 2255” and the “underlying findings of fact for clear error.” Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir.2011). In order to prevail, Cal-kins must show that her “attorney’s performance fell below a professional objective standard of reasonableness” and that she “was prejudiced.” Etheridge v. United States, 241 F.3d 619, 622 (8th Cir.2001) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance,” and when “determining whether counsel’s representation was deficient, a court must avoid second guessing trial strategy.” Johnson v. United States, 278 F.3d 839, 842 (8th Cir.2002).
Calkins argues that at sentencing, her trial counsel should have contested the PSR’s loss amount calculation and requested an evidentiary hearing rather than concentrating on a leniency argument based on the § 3553(a) factors. The record establishes, however, that Calkins’ trial counsel reviewed the government’s evidence on loss before recommending that she request leniency under § 3553(a) rather than “risk losing a ... reduction for acceptance of responsibility by disputing” loss amount. See United States v. McClain, 149 Fed. *898 Appx. 549, 551 (8th Cir.2005). The strategy recommended to Calkins was effective. By contesting loss amount and assuming her assertions were all true, Calkins could at most have secured a two point decrease in her offense level. See U.S.S.G. § 2B1.1(b)(1)(J)-(K). In contrast, by making the strategic choice to accept responsibility and request lenience under § 3553(a), Calkins obtained a three point offense level decrease and a 12 month downward variance.
The dissent argues that Calkins’ attorney was ineffective because counsel did not review certain victim impact statements underlying the government loss amount calculations.[2] The record establishes, however, that the government offered to meet “with Ms. Calkins, [her attorney], and the probation officer ... to lay out what [the] evidence is for everybody to see.” Nevertheless, Calkins chose not to attend that meeting, and she has not disputed on appeal that “defense counsel met with the government and reviewed the government’s evidence.” Thus, the dissent’s assertion that Calkins’ attorney provided ineffective assistance by failing to review evidence cannot be accepted as accurate because it is “contradicted by the record.” Engelen v. United States, 68 F.3d 238, 240 (8th Cir.1995).
Given the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance,” Johnson, 278 F.3d at 842, we conclude that Calkins has not met her “burden of proving that ... [her] lawyer’s 'actions were not valid trial strategy.” Thai v. Mapes, 412 F.3d 970, 979 (8th Cir.2005). For these reasons we affirm the judgment of the district court.

. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

. Although the dissent asserts in a quotation from part of the sentencing transcript that the victim impact statements were only available to probation and “not provided to the parties," the record shows in a later section of the same transcript that Judge Magnuson ordered the "victim impact statements be provided to counsel in camera by the probation office.” See Sent’g Tr. 30:6-9, ECF No. 34.