# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3700

_____

Nicole Walker

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 19, 2015
Filed: January 14, 2016

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Nicole Walker pled guilty to conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1). The district court[1] sentenced Walker to a mandatory minimum ten years imprisonment. We

_____

[1]The Honorable James E. Gritzner, then Chief Judge, United States District Court for the Southern District of Iowa.

affirmed Walker's sentence on direct appeal. See United States v. Walker, 688 F.3d 416, 418 (8th Cir. 2012). Walker now appeals the district court's denial of her motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.[2] Upon careful de novo review, see Thomas v. United States, 737 F.3d 1202, 1206 (8th Cir. 2013), we conclude the district court properly denied Walker relief.

## I.    BACKGROUND

On August 18, 2010, a grand jury charged Walker with one count of conspiring to manufacture and distribute at least 50 grams of actual methamphetamine and 500 grams of a mixture or substance containing methamphetamine. Through counsel, Walker entered into extensive plea negotiations with the government. In an attempt to reduce the statutory mandatory minimum Walker faced from ten years to five years and to lower her sentencing range under the United States Sentencing Guidelines (U.S.S.G. or Guidelines), Walker and her counsel repeatedly sought to lower the drug quantity to which Walker would plead guilty.

The government did not relent entirely but offered to let Walker plead guilty to a lesser-included offense under § 841(b)(1)(B) and contest the drug quantity at sentencing. After detailed discussions with her counsel about the advantages and disadvantages of the government's plea offer, Walker pled guilty on February 24, 2011, to conspiring to manufacture and distribute at least five grams of actual methamphetamine or 50 grams of a mixture or substance containing methamphetamine.

In signing the written plea agreement, Walker averred she understood she was pleading guilty to a charge that carried "a mandatory minimum sentence of at least five years in prison and a maximum sentence of up to forty years in prison." The agreement further advised Walker

---

[2]We have appellate jurisdiction under 28 U.S.C. § 1291.

the government may argue at sentencing that [Walker] is responsible for at least 50 grams of actual methamphetamine or 500 grams of a mixture and substance containing methamphetamine and, if the district court finds by a preponderance of the evidence that [Walker] is responsible for this larger amount, the court will impose a ten-year mandatory minimum sentence.

Walker understood that regardless of which mandatory minimum applied, the district court could "not impose a sentence less than the mandatory minimum sentence unless" it found Walker qualified for safety-valve relief under 18 U.S.C. § 3553(f).[3] Lastly, Walker agreed no one had promised she would "be eligible for a sentence of less than the mandatory minimum."

With respect to the voluntariness of her plea, Walker stated she "had a full opportunity to discuss" her case and the consequences of her plea with her counsel and was satisfied with her counsel's representation. Walker stated she had "no complaint about the time and attention" her counsel "devoted to [her] case nor the advice" he gave.

At Walker's change-of-plea hearing on February 24, 2011, the magistrate judge[4] reiterated the key terms in Walker's plea agreement, including Walker could face a ten-year mandatory minimum. See Fed. R. Crim. P. 11(b), (c) (change of plea). Walker restated she was satisfied with her counsel and averred no one promised or predicted the exact sentence she would receive. On the magistrate judge's report and recommendation, the district court accepted Walker's guilty plea.

---

[3]In cases involving a violation of §§ 841 and 846, 18 U.S.C. § 3553(f) allows a sentencing court to impose a sentence below an otherwise applicable statutory minimum if certain statutory conditions are met. See id. § 3553(f)(1)-(5).

[4]The Honorable Thomas J. Shields, United States Magistrate Judge for the Southern District of Iowa.

Beginning September 20, 2011, the district court conducted a sentencing hearing at which the drug quantity attributed to Walker was sharply contested. The government asserted Walker was responsible for 142.5 grams of actual methamphetamine, 182 grams of a purer form of methamphetamine known as "ice," and 724 grams of a mixture and substance containing methamphetamine. Walker, on the other hand, urged the district court to "find a drug quantity in a range of 100 to 200 grams mixture with 5 grams of such quantity being pure/ice." After reviewing "all of the evidence" in Walker's case, the district court concluded a preponderance of the evidence supported attributing the greater drug quantity to Walker despite "some reservation about the precision of that amount."

With respect to Walker's request for safety-valve relief, the district court concluded Walker did not qualify because she failed to demonstrate she "truthfully provided information regarding her offense, at least in complete detail," as required by 18 U.S.C. § 3553(f)(5). Based on its drug-quantity finding and Walker's ineligibility for safety-valve relief, the district court sentenced Walker to the statutory mandatory minimum ten years in prison. See 21 U.S.C. § 841(b)(1)(A) (imposing a mandatory minimum of ten years for a violation of § 841(a)(1) involving "50 grams or more of methamphetamine . . . or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine").

Walker appealed her sentence, challenging the total drug quantity attributed to her and the district court's conclusion she had distributed "ice." Walker, 688 F.3d at 418 n.2, 420, 422-25. We affirmed. See id. at 418, 426. On October 31, 2012, Walker petitioned the Supreme Court of the United States for a writ of certiorari, alleging the district court failed to make sufficient fact findings to support its drug-quantity determination and improperly interpreted and applied the Guidelines definition of "ice." The Supreme Court denied certiorari on December 10, 2012. See Walker v. United States, ___U.S. ___, 133 S. Ct. 801 (2012).

On December 26, 2012, Walker filed a pro se § 2255 motion, primarily alleging ineffective assistance of counsel. The district court appointed counsel to represent Walker, and her counsel then filed two amended motions, raising additional grounds for relief. The district court denied relief without an evidentiary hearing. Walker timely appeals, arguing the district court erred in failing to (1) retroactively apply Alleyne v. United States, 570 U.S. ___, 133 S. Ct. 2151 (2013), to her case; (2) find her counsel was constitutionally ineffective during her plea and on appeal; and (3) conduct an evidentiary hearing.

## II.    DISCUSSION

### A.    Mandatory Minimum Sentence

At the time of Walker's sentencing in 2011, controlling Supreme Court precedent held that the Constitution permitted a judge to find, by a preponderance of the evidence, any fact that increased the mandatory minimum sentence for a crime. See Harris v. United States, 536 U.S. 545, 568-69 (2002); accord United States v. Webb, 545 F.3d 673, 677 (8th Cir. 2008). On June 13, 2013, the Supreme Court overruled Harris in Alleyne, holding that any fact that increases the mandatory minimum sentence must be submitted to a jury and found beyond a reasonable doubt. See Alleyne, 570 U.S. at ___, 133 S. Ct. at 2155. Although Walker's direct appeal was final before the Supreme Court decided Alleyne, Walker asserts she is entitled to re-sentencing under Alleyne because, in her view, (1) "she suffered a plain error when the district court applied a preponderance of the evidence standard to increase her mandatory minimum"; (2) "Alleyne should apply retroactively"; and (3) she "was entitled to effective assistance of certiorari counsel both under federal statute and under the United States Constitution." Walker's arguments are unavailing.

### 1.    Plain Error

Walker first claims she "is entitled to relief because it was plain error for the sentencing court to increase her mandatory minimum based on a fact found by [the district court by] the preponderance of the evidence"—the sentencing procedure

authorized by <u>Harris</u> but subsequently overruled in <u>Alleyne</u>. See Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). In claiming plain error, Walker fails to recognize "'the important distinction between direct review and collateral review.'" <u>Teague v. Lane</u>, 489 U.S. 288, 307 (1989) (plurality opinion) (quoting <u>Yates v. Aiken</u>, 484 U.S. 211, 215 (1988)). "Because it was intended for use on direct appeal, . . . the 'plain error' standard is out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected . . . by the affirmance of the conviction on appeal." <u>United States v. Frady</u>, 456 U.S. 152, 164 (1982).

### 2.    Retroactivity of <u>Alleyne</u>

Walker's collateral attack on her sentence—which became final on direct review before the decision in <u>Alleyne</u>—is governed by <u>Teague</u>. See <u>Whorton v. Bockting</u>, 549 U.S. 406, 416 (2007) (explaining <u>Teague</u> "laid out the framework to" use in deciding if a rule announced in a Supreme Court opinion applies "retroactively to judgments in criminal cases that are already final on direct review"); <u>Becht v. United States</u>, 403 F.3d 541, 545 n.3 (8th Cir. 2005) (recognizing we generally must determine whether a petitioner's § 2255 "motion is barred by the rule on retroactivity announced in <u>Teague</u>"). Under <u>Teague</u>, Supreme Court decisions that create "new constitutional rules of criminal procedure" generally do not apply "to those cases which have become final before the new rules are announced." <u>Teague</u>, 489 U.S. at 310. "<u>Teague</u> stated two exceptions: '[W]atershed rules of criminal procedure' and rules placing 'conduct beyond the power of the [government] to proscribe.'" <u>Chaidez v. United States</u>, 568 U.S. ___, ___, 133 S. Ct. 1103, 1107 n.3 (2013) (alterations in original) (quoting <u>Teague</u>, 489 U.S. at 311).

Walker contends "<u>Alleyne</u> should be applied retroactively to [her] case because it was a watershed exception." Relying on pre-<u>Teague</u> cases like <u>Hankerson v. North Carolina</u>, 432 U.S. 233, 243 (1977), <u>Ivan V. v. City of New York</u>, 407 U.S. 203, 205

(1972) (per curiam), and In re Winship, 397 U.S. 358, 367-68 (1970), Walker asserts "[t]he reasonable doubt rule of Alleyne is a 'watershed rule' because its very point is to protect the innocent and balance the contest between government and accused." We disagree.

The Supreme Court "give[s] retroactive effect to only a small set of 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" Schriro v. Summerlin, 542 U.S. 348, 352 (2004) (quoting Saffle v. Parks, 494 U.S. 484, 495 (1990)). "[T]o qualify as watershed, a . . . rule must be necessary to prevent 'an impermissibly large risk' of an inaccurate" outcome and "must 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" Whorton, 549 U.S. at 418 (quoting Schriro, 542 U.S. at 352). Explaining the exception is "extremely narrow" and observing "it is unlikely that any such rules have yet to emerge," the Supreme Court has, "in the years since Teague, . . . rejected every claim that a new rule satisfied the requirements for watershed status." Id. at 417-18 (quoting Schriro, 542 U.S. at 352) (internal marks omitted).

To date, neither the Supreme Court nor this court has "held that Alleyne applies retroactively" on collateral review. Thompson v. Roy, 793 F.3d 843, 846 (8th Cir. 2015); accord Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013). And, as Walker concedes, every circuit court to consider this issue has concluded Alleyne does not apply retroactively. See, e.g., Butterworth v. United States, 775 F.3d 459, 464-65 (1st Cir. 2015); United States v. Olvera, 775 F.3d 726, 730 & n.12 (5th Cir. 2015) (listing cases from eight circuits).

Although the circumstances and analysis have varied, the circuit courts have agreed that even if Alleyne announced a new rule,[5] the decision is not the rare exception that announced a watershed rule of criminal procedure that "'alter[ed] our understanding of the bedrock procedural elements' of the adjudicatory process." United States v. Winkelman, 746 F.3d 134, 136 (3d Cir. 2014) (quoting Teague, 489 U.S. at 311); accord Hughes v. United States, 770 F.3d 814, 818-19 (9th Cir. 2014). In reaching that conclusion, the circuit courts have noted Alleyne was an extension of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), in which the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." See, e.g., Jeanty v. Warden, FCI-Miami, 757 F.3d 1283, 1285 (11th Cir. 2014) (per curiam).

"[T]he Supreme Court has not made Apprendi retroactive to cases on collateral review," Abdullah v. United States, 240 F.3d 683, 687 (8th Cir. 2001), and has "decided that other rules based on Apprendi do not apply retroactively on collateral review," Simpson, 721 F.3d at 876 (citing Schriro, 542 U.S. at 349, 358, in which the Supreme Court determined the extension of Apprendi to judicial factfinding in Ring v. Arizona, 536 U.S. 584 (2002), did not apply retroactively). The circuit courts have repeatedly followed suit. See, e.g., Olvera, 775 F.3d at 731 & n.16; In re Anderson, 396 F.3d 1336, 1339-40 (11th Cir. 2005). In concluding Alleyne does not apply retroactively, the circuit courts have reasoned, "If Apprendi . . . does not apply retroactively, then a case extending Apprendi should not apply retroactively." Hughes, 770 F.3d at 818.

---

[5]Some circuit courts have decided Alleyne announced a new constitutional rule, see, e.g., Simpson, 721 F.3d at 876, while others have declined to answer that question, see, e.g., In re Mazzio, 756 F.3d 487, 489 n.2 (6th Cir. 2014).

That reasoning is persuasive and consistent with our precedent. See Burton v. Fabian, 612 F.3d 1003, 1010 n.4 (8th Cir. 2010) ("[T]he Eighth Circuit has consistently held that Apprendi and its progeny are not rules of watershed magnitude and has declined to apply those cases retroactively."). For example, in United States v. Moss, 252 F.3d 993, 997 (8th Cir. 2001), we held "that Apprendi [wa]s not of watershed magnitude and that Teague bars petitioners from raising Apprendi claims on collateral review." We explained "we d[id] not believe Apprendi's rule recharacterizing certain facts as offense elements that were previously thought to be sentencing factors reside[d] anywhere near that central core of fundamental rules that are absolutely necessary to insure a fair trial." Id. at 998.

Our analysis in Moss applies with full force here. Walker's attempt to distinguish Apprendi and Alleyne based on the mandatory nature of a statutory minimum and the frequency with which such minimums might apply fails to convince us the extension of Apprendi in Alleyne announced the first watershed rule found under Teague.[6] See Whorton, 549 U.S. at 418; Moss, 252 F.3d at 998 n.5. We now join those circuit courts holding that even if Alleyne announced a new constitutional rule, that rule does not apply retroactively on collateral review. See, e.g., Butterworth, 775 F.3d at 465 (reviewing analogous precedent and reaching "the same conclusion about retroactivity for Alleyne as . . . for Apprendi").

---

[6]Walker also tries to distinguish Moss on the grounds that "Walker's certiorari petition was pending on direct appeal after the Supreme Court accepted Alleyne for review." The timing in Walker's case understandably makes the non-retroactivity of Alleyne more frustrating for her, but it does not change the fact Walker's sentence was final on direct review by the relevant time—the date the Supreme Court decided Alleyne. See Alleyne, 570 U.S. at ___, 133 S. Ct. at 2155; Walker, ___U.S. at ___, 133 S. Ct. at 801.

### 3. Ineffective Assistance of Counsel - Petition for Writ of Certiorari

Walker next argues her "counsel was ineffective for failing to raise the Alleyne issues in her petition for certiorari." "We review de novo 'post conviction ineffective assistance claims brought under § 2255' and the 'underlying findings of fact for clear error.'" Calkins v. United States, 795 F.3d 896, 897 (8th Cir. 2015) (quoting Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir. 2011)).

Section 2255(a) authorizes a federal prisoner to move for release "upon the ground that [her] sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Walker asserts both constitutional and statutory ineffective-assistance claims. Both fail.

### a. Constitutional Claim

Walker asserts she "was constitutionally entitled to effective assistance of counsel during the writ of certiorari phase of her appeal." Dubiously urging us to "decline to follow Ross [v. Moffitt, 417 U.S. 600, 617 (1974)], the case in which the Supreme Court held the states are not obligated to provide counsel for United States Supreme Court certiorari petitioners," Walker argues we "should find the Fifth, Sixth, and Fourteenth Amendments guarantee Walker the right to effective assistance of counsel when petitioning for a writ of certiorari."

Walker's constitutional claim is contrary to Supreme Court precedent, see, e.g, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."), and our decision in Steele v. United States, 518 F.3d 986, 989 (8th Cir. 2008), in which we held a § 2255 petitioner "had no constitutional right to counsel for the filing of a certiorari petition" with the Supreme Court. In Steele, we explained that absent a constitutional right to counsel, a petitioner had no constitutional right

to effective assistance; therefore, her "§ 2255 claim for ineffective assistance of counsel [could ]not succeed." Steele, 518 F.3d at 988; accord Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam) (explaining a defendant who "had no constitutional right to counsel . . . could not be deprived of the effective assistance of counsel").

In Steele, we also rejected the petitioner's contention "that Federal Rule of Criminal Procedure 44(a) and our circuit plan to implement the Criminal Justice Act create[d] a right to have effective assistance of counsel to file a petition for certiorari and that the breach of that right deprived her of due process." Steele, 518 F.3d at 988. We concluded "[t]he alleged breach of the provisions of our plan and Rule 44(a) did not deprive [the petitioner] of due process of law and did not give rise to a claim for ineffective representation of counsel." Id. In light of Steele, the district court properly rejected Walker's constitutional claim.

### b. Statutory Claim

Walker also asserts her "conviction was obtained in violation of her right to effective assistance of appellate counsel, as guaranteed by . . . Federal Rule of Criminal Procedure 44(a);[7] 18 U.S.C. § 3006A;[8] Eighth Circuit Plan to Implement the Criminal Justice Act of 1964 . . . ; and Eight [sic] Circuit caselaw." In particular, Walker relies on Wilson v. United States, 554 F.2d 893, 894-95 (8th Cir. 1977) (per curiam), in which this court stated "[f]ailure to advise a defendant of his right to petition for certiorari in the Supreme Court violates his right to effective assistance

---

[7]Rule 44(a) provides, "A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal."

[8]Section 3006A(c) similarly provides, "A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings."

-11-

of counsel as guaranteed by Fed. R. Crim. P. 44(a) and the Criminal Justice Act of 1964, 18 U.S.C. s 3006A . . . and violates Section V of the Eighth Circuit Plan to Implement the Criminal Justice Act of 1964."

Walker's original, amended, and second amended § 2255 motions only raised constitutional ineffective-assistance claims. On appeal, Walker concedes she did not claim a statutory right to effective assistance of counsel or even mention Rule 44(a), 18 U.S.C. § 3006A, or the Eighth Circuit plan until "her response to the government's reply brief" on her motion.

In asking the district court to reconsider its denial of her § 2255 motion, Walker asserted the district court "failed to rule whether Walker was entitled to the effective assistance of counsel under 18 U.S.C. § 3006A(a), (b), (c), and (d)(7), Federal Rule of Criminal Procedure 44(a), and the Eighth Circuit plan." Yet Walker again essentially framed her ineffective-assistance claim in constitutional terms. Walker proposed, "With these laws and rules in place to secure a defendant's right to effective assistance of counsel on appeal *as guaranteed by the Sixth Amendment*, these rules *in conjunction with the Sixth Amendment* require counsel to perform effectively once the assistance is undertaken." (Emphasis added). Relying on our analysis in Steele discussed above, the district court concluded Walker failed "to advance a basis for section 2255 relief."

On appeal, Walker asserts for the first time that we can reverse her sentence based solely on the cited statute and rules even in the absence of a constitutional right to counsel to file a certiorari petition. As Walker sees it, she "was statutorily entitled to effective assistance of counsel during the writ of certiorari phase of her appeal" once her counsel took her case and undertook to file a certiorari petition on her behalf.

-12-

But Walker acknowledges no statute or other legal authority required her counsel to file a petition for a writ of certiorari. See Steele, 518 F.3d at 988. And Walker has failed to articulate any violation of a statute or rule in her case that would provide grounds for sentencing relief under § 2255. Absent such a violation, Walker's statutory claim, even if preserved, is beyond the scope of § 2255(a).

Even if we were to assume, as Walker now proposes, that she had a statutory right to effective assistance of counsel to file a certiorari petition despite the lack of a constitutional right, we could not accept her claim that "[b]y failing to raise Alleyne, [her counsel's] performance fell below an objective standard of reasonableness" under Strickland v. Washington, 466 U.S. 668 (1984). The Supreme Court did not issue its decision in Alleyne until more than six months after it denied Walker's petition on December 10, 2012. See Alleyne, 570 U.S. at ___, 133 S. Ct. at 2155. For the entire duration of Walker's criminal case and direct review, Harris controlled. Id. As we have repeatedly held, "counsel's failure to anticipate a change in the law does not establish that counsel's performance was deficient." Anderson v. United States, 762 F.3d 787, 794 (8th Cir. 2014); accord Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002) ("[C]ounsel's decision not to raise an issue unsupported by then-existing precedent d[oes] not constitute ineffective assistance.").

## B.    Ineffective Assistance of Counsel - Plea Advice

The Sixth Amendment guarantees the right to effective counsel during plea negotiations and the entry of a guilty plea. See Missouri v. Frye, 566 U.S. ___, ___, 132 S. Ct. 1399, 1405 (2012). "Where, as here, a defendant is represented by counsel during the plea process and enters h[er] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

-13-

Walker argues her plea was involuntary because her "[t]rial counsel inaccurately advised [her] as to the sentencing consequences of her plea, the length of her sentence, and her eligibility for safety valve." According to Walker, email discussions between Walker and her counsel and the negotiations between her counsel and the government show that her counsel and the government (1) "represented to Walker she would fall within a sentencing range of 70-87 months," (2) "discounted the 10-year statutory sentence as something that would never come into play," and (3) unfairly misled Walker "to believe her sentence would be much lighter than the sentence she ultimately received." Walker's claims are rebutted by the record.

As noted by the district court, in her written plea agreement, Walker expressly stated she understood she faced a mandatory minimum of at least five years and a maximum sentence of up to forty years unless the district court found she *qualified* for safety-valve relief—which depended on the district court finding Walker was truthful in her proffer despite the government's unwavering opposition. Walker further understood the government planned to argue at sentencing she was responsible for a greater quantity of drugs, and if the district court so found, Walker would face a ten-year mandatory minimum. In the written plea and her plea testimony, Walker stated no one had predicted or promised she would receive a particular sentence, much less one that was lower than the applicable mandatory minimum.

Walker's email evidence is not to the contrary. Walker isolates a few words she proposes promised her a particular sentence, but Walker's counsel specifically informed Walker more than once he did not know what her sentence would be, particularly given what counsel described as the district court's "abundance of discretion" regarding the safety valve. In general, Walker's counsel provided detailed and accurate information and advice about the terms and consequences of Walker's plea.

-14-

To the extent Walker's counsel made any error in estimating the sentencing range Walker might face under the Guidelines, the mistake did not render her plea involuntary under the circumstances of this case. See United States v. Quiroga, 554 F.3d 1150, 1155 (8th Cir. 2009). "[I]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." Id. Walker's plea was voluntary.

## C. Ineffective Assistance of Counsel - Safety Valve
### 1. Sentencing

Walker next argues her counsel was constitutionally ineffective for failing to persuade the district court Walker qualified for safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. In an effort to reduce her sentence under § 3553(f)(1)-(5), Walker attempted to make a truthful proffer statement to the government regarding the information and evidence she had about the conspiracy. See id. § 3553(f)(5). The proffer session ended early when, as Walker describes it, "one of the government agents was unprofessional." Walker's counsel submitted a proffer letter to the district court, and in arguing for safety-valve relief in Walker's sentencing memorandum, explained the contentious circumstances of the proffer interview. In its sentencing memorandum, the government challenged the truth of Walker's proffer and averred the interview ended because the officers believed Walker was lying.

At sentencing, the district court, without mentioning the circumstances of Walker's proffer, found Walker did not prove she had "truthfully provided information regarding her offense, at least in complete detail." That finding made Walker ineligible for safety-valve relief. See 18 U.S.C. § 3353(f)(5).

-15-

Walker complains her counsel "failed to fully explain the agent's conduct during the proffer session" to the district court. Walker again fails to establish a constitutional violation. Even if a fuller explanation would have been of some value, any failure of persuasion on this point is far from an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

### 2. Appeal

Nor is Walker able to show her counsel was unconstitutionally ineffective for failing "to appeal the district court's erroneous finding that Walker did not qualify for a safety valve." "Our review is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." Charboneau v. United States, 702 F.3d 1132, 1136 (8th Cir. 2013). We "must indulge a strong presumption," Strickland, 466 U.S. at 689, "that counsel has rendered adequate assistance and made all significant decisions for tactical reasons rather than through neglect," Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014).

Walker's counsel effectively raised two issues on appeal but did not appeal the district court's safety-valve finding. By declaration, Walker's counsel explained he "did not include the safety valve issue in the appeal because [he] did not believe there was enough evidence in the record for the appellate court to find that the district court was clearly erroneous in denying safety valve." Walker challenges that tactical decision.

"The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." New v. United States, 652 F.3d 949, 953 (8th Cir. 2011).

> Where, as here, "appellate counsel competently asserts some claims on
> a defendant's behalf, it is difficult to sustain a[n] ineffective assistance

claim based on allegations that counsel was deficient for failing to assert some other claims." This is because one of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal.

Gray v. Norman, 739 F.3d 1113, 1117-18 (8th Cir. 2014) (alteration in original) (quoting Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006)). It is difficult to overcome Strickland's presumption of reasonableness unless the "'ignored issues are clearly stronger than those presented.'" Id. at 1118 (quoting Link, 469 F.3d at 1205).

Although Walker maintains her counsel should have raised the safety-valve issue on appeal, she neither compares the strength of that claim to those appeal issues her counsel asserted nor otherwise casts doubt on her counsel's strategic decision not to raise it. Without evidence to the contrary, we presume Walker's counsel's decision not to argue the district court's safety-valve finding was clearly erroneous "'was an exercise of sound appellate strategy.'" United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)).

## D. Evidentiary Hearing

Walker last suggests the district court abused its discretion in denying her an evidentiary hearing "because the claims of ineffective assistance of counsel deal with fundamental choices that could have only been made by Walker" and a hearing would have allowed her to question her counsel regarding her ineffective-assistance claims. "We review a district court's decision to deny an evidentiary hearing for abuse of discretion; however, we are obligated 'to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo.'" Thomas, 737 F.3d at 1206 (quoting Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010)).

Section 2255(b) requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief." No hearing is necessary "if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003).

Evaluating Walker's specific bases for requesting an evidentiary hearing, the district court decided "[t]he files and records of this case conclusively show Walker is not entitled to relief." The district court further found "Walker fail[ed] to identify any issue where further factual development would be material to resolution of the issues in this case." After careful review of the record, we detect no abuse of discretion in the district court's decision to deny an evidentiary hearing. See Tinajero-Ortiz, 635 F.3d at 1106.

## III.  CONCLUSION

We affirm the judgment of the district court.

_____